UNITED STATES of America, Appellee,

v.

Gilbert H. PAULTON, Appellant.

No. 75–1916.

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1976.

Decided July 30, 1976.

Rehearing Denied Sept. 9, 1976.

Before VOGEL, Senior Circuit Judge, and HEANEY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Gilbert H. Paulton, hereinafter called defendant, appeals from a judgment of the United States District Court for the District of South Dakota[1] entered after a jury had found the defendant guilty of nine violations of 26 U.S.C. § 7215(a). The nine-count information charged that with respect to pay periods extending from about December 5, 1974 through about March 26, 1975 the defendant, an employer of labor, failed to pay over federal withholding taxes collected from his employees into a special trust account in a bank as required by 26 U.S.C. § 7512(b) after being formally required by notice to do so as provided by § 7512(a).[2]

After a motion for a continuance had been denied, trial before the jury began on September 24, 1975 and was concluded on September 26. Throughout the trial the defendant served as his own attorney, but had the assistance of a legal intern appointed by the district court the day before the trial.

After having been found guilty, defendant remained at liberty until December 2, 1975 when he appeared for sentence. The district court imposed cumulative fines on the defendant aggregating $900.00 ($100.00 on each count); and also sentenced the defendant to confinement in a jail type institution for six months on each count of the information, but with the sentences to run concurrently.

Gilbert H. Paulton, pro se.

William P. Fuller, Sioux Falls, S. D., on briefs for appellant.

Robert D. Hiaring, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; William F. Clayton, U. S. Atty., Sioux Falls, S. D., and Michael Hickey, Legal Intern, on briefs.

Execution of the jail sentence was suspended and defendant was put on probation under certain conditions. Two of those conditions had to be met by 10:30 a.m. on the following day, December 3. The defendant did not meet at least one of them and was

1. The Honorable Fred J. Nichol, Chief Judge, United States District Court for the District of South Dakota.

2. A violation of § 7215(a) is a misdemeanor, punishable by a fine of not more than $5,000.00 or by imprisonment for not more than one year, or by both such fine and imprisonment.

immediately confined by the marshal pursuant to the district court's oral directive given during the sentencing hearing. However, defendant immediately filed a notice of appeal, and on December 4 he was enlarged on bail pending disposition of the appeal.

After the appeal had been docketed, this court on its own motion appointed counsel to represent the defendant. Counsel has acted with skill and with diligence. While professing satisfaction with his appointed counsel, defendant sought and obtained leave to make an argument before us, and did so.[3]

For reversal, the defendant advances a number of contentions that we will discuss but not in the order in which they appear in defendant's brief.

As is well known, employers are required by pertinent provisions of the Internal Revenue Code to withhold social security and federal income taxes from the wages of employees, to make quarterly returns of their withholdings on IRS Form 941, and to pay over to the government the amounts of wages withheld. Under the provisions of 26 U.S.C. § 7501 wages withheld from employees are deemed to be held in trust for the benefit of the United States, and the employees in question are given credit for the amounts of the withholdings regardless of whether their employers pay the money over to the government as required. The statutory and regulatory scheme and the obligations of employers thereunder were recently discussed by this court in some detail in *Hartman v. United States*, 538 F.2d 1336 (8th Cir. 1976). *See also Kelly v. Lethert*, 362 F.2d 629 (8th Cir. 1966), and *United States v. Strebler*, 313 F.2d 402 (8th Cir. 1963).

If an employer is persistently delinquent with respect to his withholdings, the Internal Revenue Service may invoke against him the rather stringent provisions of 26 U.S.C. § 7512. When that section is invoked, the employer is notified by a hand delivered notice that he must open a special trust account in a bank for the benefit of the government, and must pay over into that account all withholdings from wages within two banking days after the withholdings are effected. After that notice has been served, the employer is required by § 7512(b) to open the account and make the payments into it. In addition, he is required to file monthly returns using Form 941M and to make monthly remittances to the government out of the trust account.

Section 7215(a) makes it a misdemeanor for an employer to violate § 7512(b). However, § 7215(b) makes certain exceptions to criminal liability under the preceding subsection. Subsection (a) does not apply where a defendant shows that there was reasonable doubt as to whether the taxes were legally collectible or as to whether he was a person required to collect them, or where the defendant shows that his failure to collect and pay over was due to circumstances beyond his control. However, the statute provides that a mere lack of funds immediately following a payment of wages, whether brought about by the payment or not, is not deemed to be a circumstance beyond the control of a defendant. *See* in this connection *United States v. Plotkin*, 239 F.Supp. 129, 131 (E.D.Wis.1965).

We turn now to the facts of the case which are largely undisputed.

During 1974 and 1975 defendant was engaged in Sioux Falls, South Dakota in the business of cleaning floors and upholstery. Although it is inferable that his business was relatively small, he did have a number of employees whom he paid by check approximately once every two weeks. He withheld taxes from the wages of those employees but consistently failed during the period with which we are concerned to file his quarterly returns promptly, and he also failed to pay over his withholdings. He

---

**3.** We note at this point that defendant makes no claim that he was denied the assistance of counsel in connection with the proceedings in the district court. He deliberately chose to represent himself after discharging the attorney whom he had originally employed to represent him.

apparently used them as a source of funds for his own business purposes.

In August, 1974 defendant was delinquent with respect to his withholdings and was called upon by Internal Revenue Agent Robert Baily. Defendant was given detailed information by Agent Baily with respect to defendant's duty to file returns and make payments, and he was warned that if he continued to be delinquent, he would be subjected to the requirements of § 7512(b).

The defendant did not heed that warning. On November 24, 1974 Agent Baily called on the defendant again and served on him personally the notice called for by § 7512(a). In late December Agent Baily called on the defendant yet again and was advised that a special trust account had been opened in an identified bank. As to his returns, defendant said that he had mailed them to Ogden, Utah, rather than to Aberdeen, South Dakota. Investigation revealed that no special bank account had been opened, and IRS records failed to reflect the filing of returns in either Ogden or Aberdeen.

With affairs in this state, Agent Baily turned the file over to the Intelligence Division of the IRS for investigation and possible criminal prosecution. The case was assigned to Special Agent Charles Smith of the Intelligence Division.

Smith and Baily visited defendant at his place of business on the morning of April 7, 1975. The defendant was already acquainted with Baily. Smith identified himself as a Special Agent of the Intelligence Division and advised the defendant that the purpose of the visit was to investigate his withholding delinquencies, and that a criminal prosecution might result or that a fraud penalty might be assessed. The defendant was advised of certain of his constitutional rights. The agents then left after advising the defendant that they would return and that in the meantime he might consult an attorney if he so desired. At the defendant's suggestion the agents returned about the middle of the afternoon.

The defendant indicated that he was willing to answer questions. He stated that he was responsible for the records of the business, and he admitted that he had not opened a special bank account and had not mailed the required Forms 941M. Although advised that he was not required to turn over his records to the agents, the defendant did so, and the agents made copies of pertinent documents.

Thereafter, the prosecution of the defendant was instituted. Further facts will be stated in the course of the discussion of defendant's several contentions.

■ Defendant contends, among other things, that 26 U.S.C. § 7512 is unconstitutional in that it does not provide for a prior administrative hearing before an employer is required to comply with § 7512(b). The same contention was made and rejected in *United States v. Patterson*, 465 F.2d 360 (9th Cir.), *cert. denied*, 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1972), and in *United States v. Plotkin, supra*. We agree with the result reached in those cases. Had defendant desired a judicial review of the administrative action taken with respect to him, he could have opened the required special account, made a deposit in it, and then sued for a refund. *United States v. Plotkin, supra*, 239 F.Supp. at 131–32, cited with approval in *United States v. Patterson, supra*, 465 F.2d at 361.

■ We next consider defendant's claim that the district court erred in overruling a motion for a continuance filed on the first day of the trial.

The record reflects that after the information was filed, defendant employed local counsel who appeared with him at arraignment at which time a plea of not guilty was entered. Prior to August 11, 1975 defendant's attorney was notified that the case was being set for trial as a back-up case on September 8. On August 11 counsel advised the Assistant United States Attorney who was handling the case that he had been discharged as of that day, but that defendant was being notified of the setting.

On September 8 defendant appeared in court without counsel and filed a written motion for a continuance. The district

court seems not to have acted formally on that motion, but the case was not tried on that day. It was re-set tentatively for October 14, a date that was satisfactory to the defendant. On September 17 defendant was notified formally that the case would be tried if possible on October 14, and that if it could not be reached on that date it would be tried on October 16.

However, on September 22 Judge Nichol called the defendant on the telephone and told him that it had become necessary to set the case for trial on September 24. On September 23 Judge Nichol requested a third year law student to assist the defendant in the course of the trial.

On September 24 the defendant moved for a continuance of sixty days or in the alternative for an order dismissing the information on account of the alleged inability of the defendant to defend himself on such short notice. In his motion he indicated that he had been preparing himself to defend the case, and that he could probably have been ready on October 14. He did not indicate that he was trying to employ other counsel or that he was indigent or that he wanted counsel appointed for him.

The motion was denied, and the case went to trial. The transcript makes it quite clear that throughout the trial Judge Nichol was zealous in the protection of the rights of the defendant and gave him almost unlimited leeway in attacking the government's case and presenting his own. The defendant cross-examined the government's witnesses at length and testified at length on his own behalf. He received substantial assistance from the legal intern who has been mentioned. He objected to evidence as to admissions made by him to the agents and to the admission of copies of the documents that the agents had examined, and his objections are properly before us for consideration presently.

The question of whether the case should have been continued was one that addressed itself to the discretion of the trial court, and we cannot say that that discretion was abused or that the defendant sustained prejudice by being required to go to trial on September 24 rather than on some later date. We are not advised of any specific and concrete way in which more time would have improved or altered the defendant's case. His contentions would have been precisely the same, and in all probability the result of the trial would have been precisely the same.

█ In a prosecution under § 7215(a) the government is not required to prove willfulness or fraudulent intent, and laying to one side questions of admissibility of evidence, the defendant from a factual standpoint had no legal defense to the charges. His position was that the federal withholding and income tax laws are unconstitutional, are morally wrong and are not binding on the consciences of individuals, that he had always intended to pay over the withholdings but had been prevented from doing so by reason of his precarious financial situation, and that he was being prosecuted unjustly and solely for the purpose of being held up as an example to other employers. Assuming that the government's evidence was legally admissible, the defendant's only real hope was to receive an acquittal at the hands of a sympathetic jury. The district court gave the defendant ample opportunity to expound his positions, but the jury was not persuaded.

On this issue, we find that this case is distinguishable from *United States v. White*, 529 F.2d 1390 (8th Cir. 1976).

█ We next consider defendant's claim that the district court erred in permitting the agents to testify with respect to defendant's admissions and in admitting into evidence copies of the documents examined by the agents. He says that his statements to and cooperation with the agents on April 7, 1975 were not made and given voluntarily and with an understanding of his fifth amendment rights, and he says that he was not warned adequately as to what those rights were.

The area now under consideration was developed fully and carefully in the course of the trial, and the district court held that the challenged evidence was admissible.

That ruling finds substantial support in the evidence and is not clearly erroneous.

As to the adequacy of the warnings, it should be pointed out that when the defendant was interviewed on April 7, 1975 he was not in custody and had not been charged with crime. In such circumstances he was not entitled to the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See United States v. Pohlman,* 522 F.2d 974, 978 (8th Cir. 1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976), and cases cited. Pursuant to prescribed procedures of the IRS the agents in fact gave the defendant essentially the warnings and advice that *Miranda* requires with respect to persons who are being interviewed while in custody. The defendant complains that he was not advised that if he was unable to employ an attorney, the court would appoint one to represent him gratis. That particular advice was simply not applicable to the defendant's situation. When the defendant was interviewed, neither the district judge nor the United States magistrate had come into the picture, and the IRS had no authority to appoint an attorney for the defendant. In addition, in April, 1975 the defendant was not indigent, and in fact, as has been seen, he employed counsel after charges were filed against him.

■ Since both interviews with the defendant on April 7 were conducted by the same agents and in the same circumstances and since only a short period of time elapsed between the two interviews, we see no merit in defendant's claim that the agents should have repeated their warnings when they returned for the second interview in the afternoon.

■ Another contention made by the defendant is that the government failed to prove beyond a reasonable doubt the dates upon which the wages mentioned in the information were paid. We are satisfied that there was substantial evidence from which the jury could find that wages were paid at least constructively and that taxes were withheld from those wages on or about the dates mentioned in the information and appearing on the checks that were introduced in evidence. It is not material that the checks may not have been delivered on the exact dates appearing thereon or that particular employees may not have cashed their checks immediately after receiving them. 26 CFR § 31.3402(a)–1; *United States v. McMullen,* 516 F.2d 917, 921 (7th Cir. 1975), *cert. denied,* 423 U.S. 915, 96 S.Ct. 222, 46 L.Ed.2d 144 (1975).

Defendant urges that the exceptions appearing in 26 U.S.C. § 7215(b) unconstitutionally place upon a defendant charged with having violated § 7215(a) the burden of proving his innocence and infringe his privilege against self-incrimination.

We see no substance in the claim of the defendant that § 7215(b) violates his fifth amendment privilege against self-incrimination. And we do not agree with his argument that the "showing" requirement of the subsection impermissibly shifts to one charged with a violation of § 7215(a) the burden of proving his innocence or creates any presumption of guilt.

■ When Congress adopted what became § 7215(a) it chose not to make willfulness an essential element of the offense defined by the statute. However, it adopted the exceptions appearing in § 7215(b) not for the purpose of burdening a defendant charged under the preceding subsection but rather to protect from conviction a person whose failure to pay over taxes might bring him within the literal terms of § 7215(a) even though there might have been reasonable doubt as to his legal liability to collect and account for the taxes and even though his failure might have been due to circumstances beyond his control other than a mere shortage of funds immediately following a payment of wages. *See United States v. Gorden,* 495 F.2d 308 (7th Cir.), *cert. denied,* 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974).

■ No one questions the proposition that it is a violation of due process of law to require a defendant by statute or otherwise to assume the burden of persuasion with

respect to an essential element of the offense charged. Thus, in *Stump v. Bennett,* 398 F.2d 111 (8th Cir.), *cert. denied,* 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968), we held that a rule of Iowa law which required a defendant in a criminal case to prove an alibi by a preponderance of the evidence was unconstitutional; in so holding we took the position that a claim of alibi is not an affirmative defense, and that a defendant's presence at the scene of a crime which he is alleged to have committed directly and personally is an essential element of the offense charged, and must be proved by the prosecution beyond a reasonable doubt.

It does not necessarily follow, however, that it is unconstitutional to shift to or place upon a defendant the burden of coming forward with evidence in support of a particular contention. And it has been frequently held that where a criminal statute contains exceptions which take out of the scope of the statute conduct which otherwise would fall within its terms, the prosecution is not required initially to negative the applicability of the exceptions to the case at hand; in such a situation a defendant must come forward with evidence at least sufficient to create a real issue as to whether or not he is entitled to the benefit of the exception which he invokes. *See, e. g., United States v. Chodor,* 479 F.2d 661 (1st Cir.), *cert. denied,* 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973); *United States v. Holmes,* 187 F.2d 222 (7th Cir.), *cert. denied,* 341 U.S. 948, 71 S.Ct. 1015, 95 L.Ed. 1372 (1951); *United States v. Krepper,* 159 F.2d 958 (3d Cir.), *cert. denied,* 330 U.S. 824, 67 S.Ct. 865, 91 L.Ed. 1275 (1947); *7 Fifths Old Grand-Dad Whiskey,* 158 F.2d 34 (10th Cir.), *cert. denied,* 330 U.S. 828, 67 S.Ct. 870, 91 L.Ed. 1277 (1947); *Williams v. United States,* 78 U.S.App.D.C. 147, 138 F.2d 81, 153 A.L.R. 1213 (1943). When the defendant has done that, the general rule is that the burden is on the government ultimately to establish beyond a reasonable doubt that the exception is not applicable. *Williams v. United States, supra; United States v. Fabrizio,* 193 F.Supp. 446, 448-50 (D.Del.1961). The general rule just stated appears to

have been followed by the district court in *United States v. Plotkin, supra,* which, like the instant case, was a prosecution under § 7215(a) for failure to pay over withholdings as required by § 7512(b).

■ Having determined that § 7512(b) is not unconstitutional, it becomes necessary to consider whether the jury was correctly instructed with respect to the statutory exceptions bearing in mind that we must consider the instructions as a whole.

With respect to the exceptions the district court instructed substantially in the language of the statute. The jury was told:

> You are instructed that the defendant in this case would not be guilty of the offense charged *if he has shown* that there was a reasonable doubt as to whether the law required the collection of the tax or a reasonable doubt as to one who the person or persons required by law to collect such tax, or *if he has shown* that his failure to comply was due to circumstances beyond his control; and I'm quoting from the statute on that.
>
> It is not a defense, however, to show that there was a lack of funds with which to make the deposits after the payment of wages, and such situation should not be considered to be a circumstance beyond the control of the defendant. (Emphasis added.)

At the commencement of the charge the jury was told that it must consider the instructions as a whole. The jury was also told that at the beginning of the trial the defendant was presumed to be innocent, that the information was not evidence of guilt, and that its filing created no presumption of guilt. In a later part of the instructions the jury was advised as to the contentions of the defendant including his claim that he was without funds to pay the taxes. The jury was told that the burden was on the government to prove the essential elements of the offense by evidence beyond a reasonable doubt, and then it was told what those elements were.

Immediately thereafter, the district court returned to the questions of presumption of

innocence and burden of proof, and we deem it well to quote from the instructions at some length:

. . . So the presumption of innocence alone is sufficient to acquit a defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all the evidence in the case.

It is not required that the Government must prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense— the kind of doubt that would make a reasonable person hesitate to act.

The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture.

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant, for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

A reasonable doubt exists whenever after careful and impartial consideration of all the evidence in the case the jurors do not feel convinced to a moral certainty that a defendant is guilty of the charge. So, if the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury should of course adopt the conclusion of innocence.

Assuming arguendo that the trial court's instruction with respect to the statutory exceptions might have been worded so as to eliminate the phrase "if he has shown," we think that when the instruction is considered in connection with the other instructions that we have mentioned, the instruction did not place an impermissible burden of proof on the defendant and did not prejudice him.

Further, we have considerable doubt that the defendant was actually entitled to an instruction based on § 7215(b). There was never any doubt, reasonable or otherwise, that the wages of defendant's employees were subject to withholding taxes or that the defendant was the person who was required to collect and account for the taxes. And there was no evidence that defendant's failure to pay over the withholdings was due to any circumstance beyond his control other than the fact that he was short of funds during the period in question, and that is not a circumstance to be considered under § 7215(b). What the jury was really concerned with was the question of whether the defendant had violated § 7215(a), not whether he came within one of the exceptions, and the jury was clearly told that the burden of proving the basic statutory violation by the evidence and beyond a reasonable doubt was on the government.

■ Yet another argument of the defendant is that if he was guilty of anything, he was guilty of one continuing offense and not of nine separate offenses. We reject that contention since we agree with the government that the defendant owed a separate duty with respect to each of the nine pay periods referred to in the information, and that each breach of duty involved a separate offense. *Cf. United States v. Keig,* 334 F.2d 823 (7th Cir. 1964). The charges involved in this case are quite different from those involved in *United States v. Universal C. I. T. Credit Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952), cited by counsel for the defendant.

■ Finally, the defendant attacks some of the terms and conditions under which he was placed on probation with respect to his concurrent jail sentences.[4] He complains principally that he was required to discharge within approximately twenty-four hours his accrued withholding tax obligations amounting to about $1500.00 and that in addition he was required to pay the $900.00 in fines in monthly installments of $150.00 each commencing in January, 1976. It was the defendant's inability to raise the $1500.00 within the time limited that caused him to be incarcerated on December 3, 1975.

---

**4.** The sentences themselves were well within statutory limits and were not excessive.

18 U.S.C. § 3651 authorizes a district court in the exercise of its discretion to suspend imposition or execution of a sentence and to place a defendant on probation on such terms and conditions as the court deems best. The terms and conditions of a probation may be modified from time to time. And the statute specifically provides that probation may be conditioned upon the payment of a fine or the making of restitution to a person damaged by a defendant's criminal act.

It is settled that probation is a matter of grace and not of right. And a district court has wide, albeit not unbounded discretion in prescribing the terms and conditions on which probation will be granted. *United States v. Fultz,* 482 F.2d 1 (8th Cir. 1973); *United States v. Alarik,* 439 F.2d 1349 (8th Cir. 1971).

The transcript of the sentencing proceedings in this case reveals that the trial judge was seriously concerned with how best to deal with the defendant. The judge felt that the defendant was a well meaning and generally law abiding citizen who had probably been carried away by his political opinions about such matters as federal taxes. And the judge evidently felt that it was necessary to take relatively strong measures if the defendant was ever to get his business with the government in proper order. Moreover, it should be remembered that the defendant had been convicted in September, 1975 but was not sentenced until early December; he had thus had a substantial period of time within which to make arrangements to settle his withholding obligations to the government.

We cannot say that the terms of the probation prescribed by the district court were unreasonable, arbitrary or capricious or that they amounted to an abuse of discretion. Accordingly, we affirm the conviction and the sentence imposed by the district court.

We observe, however, that the time limitations imposed by the district court have expired. If the defendant has not paid the arrearages in withholdings that he owed when he was sentenced, he obviously cannot now do so within the time prescribed by the district court. Nor is it possible for him to pay his fines retroactively. More than six months have elapsed since the defendant was sentenced, and conditions affecting him may well have changed during the pendency of this appeal. Upon the filing of our mandate it will be open to the district court to reconsider the matter of defendant's sentence, and if the district court decides to reinstate defendant's probation with respect to his jail sentence it may do so on such terms and conditions as appear to be reasonable and appropriate at the time.

Affirmed.